IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| Cathy A. Mitchell, | ) | |
| | ) | C/A No. 8:12–548-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| Conseco Life Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff Cathy Mitchell's ("Mitchell's") Motion for Class Certification, pursuant to Fed.R.Civ.P. 23(a) and (b)(3). (ECF No. 60). Defendant Conseco Life Insurance Company ("Conseco") has filed a response opposing the motion (ECF No. 66) and Mitchell has filed a reply (ECF No. 67). A hearing was held on the motion on May 23, 2013. As discussed below, Mitchell has failed to show that she has met all requirements of class certification, and therefore . For the reasons below, the motion is denied.

**I. Facts/Background**

In February 1985, Mitchell purchased a cancer treatment benefits policy from Transport Life Insurance Company, which after a series of acquisitions, Conseco now administers. (Am. Compl. ¶¶ 14-15). A cancer treatment benefit policy is a supplemental insurance policy which provides direct payment to the insured for covered cancer treatments, and typically includes chemotherapy, radiation, blood, platelets, and plasma.[1] (Am. Compl. ¶ 14). Conseco

---

[1] "Benefits under this kind of policy are paid regardless of whether the patient has other insurance sufficient to cover all medical expenses. When the patient has other insurance covering cancer treatments, the policyholder is able to retain the money received as a result of the supplemental coverage." *Ward v. Dixie Nat'l Life Ins. Co.*, 257 Fed. Appx. 620, *2 (4th Cir. 2007).

underwrites two types of these cancer policies: actual charges policies and pre-defined policies. Conseco explains that when "an actual charge [policy] is considered — [it pays] the benefit billed by the provider. A predefined policy indicates that there is a daily or per unit limitation." (Pl.'s Mem. Supp. Mot. to Cert. Class Ex. C - Rule 30(b)(6) Deposition of Conseco at 43).

Mitchell's policy included the following provision:

BLOOD AND PLASMA BENEFIT. The Insurance Company will pay benefits based on actual charges for blood and blood plasma. There will be no Lifetime Maximum Benefit, but benefits are not provided for processing charges or for blood which is replaced by donors.

(Am. Compl. ¶ 28). The terms "actual charges," "blood," and "blood plasma" are not defined by the policy.

In late February 2011, Mitchell was diagnosed with Stage III ovarian cancer. (Am. Compl. ¶ 18). Since March 2011, Mitchell has undergone numerous treatments and incurred over $1,300,000 in charges for her cancer treatment of which she alleges $90,000 are covered by her cancer treatment benefits policy. (Am. Compl. ¶¶ 20-23).

In her Amended Complaint, Mitchell alleges claims for breach of contract and bad faith refusal to pay against Conseco based upon Conseco's failure to pay benefits due under a cancer benefits policy. Mitchell argues that Conseco breached the insurance contract by failing to adjust the policy based upon the usual and customary meaning of the blood benefits provided. Instead, Conseco utilized provider-produced revenue codes found on the insured's medical bills to determine what services would be treated as compensable services and/or products under the blood and plasma benefit provision. Conseco denied Mitchell's insurance claims based upon its policy of finding blood products and services associated with revenue codes 390 through 399 as noncompensable.

In the motion before the court, Mitchell seeks certification of the following class:

All persons insured under "Actual Charges" cancer benefit policies from Conseco Life Insurance Company sold in South Carolina who have made claims for

2

> "Blood Benefits" provided by the policies from December 20, 2008 to the present and whose claims for "Blood Benefits" have included medical revenue codes 390-399.
>
> Excluded from the class are the officers, directors and employees of the defendant.

(Pl.'s Mem. Supp. Mot. for Class Cert. at 1).

## II. Applicable Law

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted). "[T]o justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. (Internal quotation marks and citation omitted). "A district court has broad discretion in deciding whether to certify a class." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). The party seeking class certification bears the burden of demonstrating that all requirements of class certification are met. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).

"[W]hile an evaluation of the merits . . . is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004). However, the likelihood of the plaintiffs' success on the merits is not relevant to the issue of whether certification is proper. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974). Therefore, in evaluating a class certification motion, the court should accept the putative class representative's allegations as true, but should also go beyond the pleadings to the extent necessary to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982).

Pursuant to Rule 23(a), to obtain class certification, the plaintiff must satisfy the following elements: "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy.

The final three requirements of Rule 23(a), commonality, typicality, and adequacy of representation, "'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)(*citing Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).

Additionally, if the Rule 23(a) requirements are met, the court must then determine if the class fits into one of the categories outlined in Rule 23(b).  To meet the requirements of Rule 23(b), the plaintiff must establish either: (1) that prosecution of separate actions would risk inconsistent standards of conduct for the Defendant, or would impede the ability of other class members to protect their interests; (2) that the class is primarily seeking injunctive or declaratory relief; or (3) that common questions predominate over individual questions such that a class action is superior to any other method of adjudication.

### III. Discussion

As noted above, Mitchell must satisfy all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  *See In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989)(holding proof of each of the class requirements rests with the plaintiff who is seeking class certification).  Conseco contends Mitchell cannot meet this burden because the common issues of fact and law relevant to Mitchell's breach of contract claim do not sufficiently predominate over questions affecting individual members. Conseco contends that the court would be unable to resolve the issues of causation and damages without assessing each

class member's claims on an individualized basis.  Further, Conseco contends Mitchell is not typical of the class because there are different insurance policy forms among the putative class members and the blood and plasma benefit provision varies among these policy forms.  Finally, Conseco contends that Mitchell has failed to establish that the class is so numerous that joinder is impracticable.

In evaluating the numerosity requirement, numbers alone are not controlling.  *Ballard v. Blue Shield of Southern West Virginia, Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976)(citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 S.E.2d 648, 652-54 (4th Cir. 1967)).  Mitchell must show that "the class is so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  The court must consider the circumstances of each case in evaluating the practicability of joinder.  *See Ballard*, 543 F.2d 1080.  "The 'practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion.'"  *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 231 (D.S.C. 2009) (citations omitted).  In this circuit, class actions have been found to meet the numerosity requirement with as few as eighteen members.  *See  Cypress*, 375 F.2d at 653.

Conseco acknowledges that Mitchell is not required to identify the precise number of persons in the purported class in order to demonstrate impracticability of joinder.  *Doe v. Charleston Area Med. Center, Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) ("Where the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable.").  However, Conseco contends that Mitchell has failed to meet her burden of showing that the class is so numerous that joinder is impracticable.  (Def.'s Mem. Opp. Mot. to Cert. Class at 2).

Since June 13, 2009, Conseco has issued, sold, assumed and/or administered 2,467

cancer policies in South Carolina. Mitchell contends that, in a discovery response, Conseco stated that "the number of insureds in the State of South Carolina who have made claims on any Conseco Life cancer policies encompassing a benefit for 'blood' and/or 'blood plasma' since June 13, 2009 is 304." At a hearing on this motion, Conseco argued that this interrogatory response does not establish a potential class of 304 members. Conseco contends that the question propounded was how many insureds with cancer policies which include a blood benefits provision have submitted any claims. Conseco contends the question was not limited to how many of these insureds have filed blood benefits claims.

In response, Mitchell requested that she be allowed, at her expense, to review the claims files of the 304 insureds initially identified by Conseco in order to determine which of these insureds may qualify as putative class members. Conseco objected citing privacy concerns and referring to the request as a fishing expedition. In response, counsel for Mitchell narrowed the request to 100 of the 304 claim files and, after taking the motion under advisement, the court granted Mitchell's request and ordered Conseco to produce the first 100 of the 304 claim files for Mitchell to review.[2] After her review, in her supplemental memorandum, Mitchell identified fifteen claims which possessed charges from blood benefits with revenue codes 390 through 399. Mitchell contends "Conseco declined to pay insurance proceeds related to such blood benefits on all of these claims." (ECF No. 86 at 4). Using these findings, Mitchell extrapolates an estimate of 44 potential class members out of all 304 files. (Id. at 2, 4-5).

In its response to Mitchell's supplemental memorandum, Conseco argues that the estimated class size is actually fewer than six. (ECF No. 91 at 1). Conseco contends that out of the fourteen claims identified by Mitchell, only one involved a revenue code as the basis for the

---

[2]To address Conseco's privacy concerns, the court ordered that the names and addresses of the claimaints must be redacted and that the files were subject to the confidentiality order entered in this action.

denial. (*Id.* at 2). Conseco contends that two of the claims were paid and nine claims were denied because the primary diagnosis for the insureds' hospitalization was not listed as cancer. Therefore, Conseco contends that there are only two putative class members identified out of the 105 claim files reviewed by Mitchell, which would equate to only approximately six putative class members if all 304 files were considered. *Id*. Mitchell filed a reply addressing each of the fourteen claims and again concluding that each of these are putative class members. (ECF No. 93).

The court has carefully reviewed the redacted claim files which were filed under seal. (ECF Nos. 96, 97). As Mitchell notes, Conseco has divided the fourteen claims into three categories: 1) nine claims alleged denied because the "primary diagnosis for the hospital confinement was not listed as a cancer diagnosis;" 2) two claims where the blood benefits were not addressed as being paid or denied; and 3) two claims alleged paid. (*See* ECF No. 93 at 1).

The court finds one claim which Conseco initially denied because the primary diagnosis for the hospital confinement was not listed as cancer was re-submitted and Conseco subsequently denied the claims with revenue code 390 for blood storage and processing fees because blood benefits were "not on the listed policy benefits." (ECF No. 96-7 at 3, 7). Accordingly, this claimant would be a potential class member.

Another claimant submitted claims which were denied on the basis that the hospital stay was non-cancer related. (ECF No. 97-1 at 4). The claimant subsequently re-submitted the claims with supporting documentation, and Conseco again denied the claim for the hospital stay stating that the policy "only pays for the expenses listed in [the] policy." (ECF No. 97-1 at 7). The claimant submitted the claim a third time with further documentation and Conseco denied the claim, this time stating "the benefits have previously been paid for the submitted bill(s), therefore, no further benefits are due." (ECF No. 97-1 at 10). Conseco asked the claimant in the future to check her records and verify whether a the claim had been paid prior to filing a claim to

avoid duplicate claims.  *Id*.  And additionally, stated, "Please be advised that your policy doesn't cover blood, storage, processing, administration, and transfusion expenses."  *Id*.   Despite the reference to the blood benefits not being covered by the policy, it appears based on the record that the benefits were denied on the basis that Conseco had previously paid the claim.[3]  Accordingly, this claimant would not be a potential class member.

As to the remaining seven claims denied as non-cancer hospital stays, Mitchell contends that the contemporaneous records show that these claimants were being treated for cancer.  However, Mitchell does not contest that all benefits, including the blood benefits, were denied on the basis of having been coded as a non-cancer related hospital stay.  The claims for blood benefits were not denied because the charges were for blood benefits associated with revenue codes 390 through 399, as the class is defined.  This action revolves around Conseco's allegedly improper denial of blood benefits based upon revenue codes 390 through 399, not denials in general.  Accordingly, the court finds that these claimants would not meet the class definition and are not proper purported class members.

As to one of the two claims Conseco contends was paid, the claims records show that while Conseco paid some of the claims, it denied all blood benefits for one of the claimants. (ECF No. 96-5 at 4).  Accordingly, this claimant would be a potential class member. The other claimant Conseco contends was paid $999.99 on blood products claims submitted in the amount of $1,048, or for all but $48.01.  Mitchell acknowledges that Conseco did not provide any other information specifying exactly what claims were paid, but because the entire charges were not paid, the claimant is a proper class member.  The court disagrees.  The record does not establish

---

[3] Additional evidence showing whether Conseco actually paid the claim at some point is not in the record.  However, the denial of the claim appears not to have been based on the revenue codes 390 through 399.  In any event, even if this claimant was included as a potential class member, using the 2.9 sample ratio used by the parties, the overall estimate of potential class members would be 14.5, or rounded up, fifteen members. And the court would still find Mitchell has not meet the numerosity requirement as discussed herein.  *See infra* p. 9-10.

on what basis the entire claim was not paid. Without knowing if the revenue codes 390 through 399 were the basis for partially denying this claim, this claimant is not a proper class member.

Finally, as to the two claims where Conseco did not address the blood benefits in its correspondence, the court finds that without some evidence that the claims were denied based upon revenue codes 390 through 399, these claimants would not be proper class members.

Therefore, the court finds that there are four claimants out of the 105 reviewed files who have been identified as having blood benefits denied based upon the revenue codes 390 through 399. Using the 2.9 sample ratio calculated by the parties, the reasonable estimate of the number of class members in all of the 304 files would be 11.6, or approximately twelve potential class members.

As noted above, no specific minimum number is needed to maintain a class action. "When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D.Md.1997)(internal citation omitted). However, "it is exceedingly rare to certify classes with less than 25 members." *Kennedy v. Va. Polytechnic Inst. & State Univ.,* No. 7-08-cv-579, 2010 WL 3743642, at *3 (W.D. Va. Sept.23, 2010) (collecting cases). *But see Cypress*, 375 F.2d 648, 653 & n. 9 (4th Cir. 1967) (concluding that eighteen is a sufficiently large number to meet the numerosity requirement for a class action under the circumstances alleged in that case). In addition to considering the size of the class, court should also consider the ease of identifying its members, the facility of making service on them if joined, and their geographic dispersion. *Hewlett*, 185 F.R.D. at 215; *see also Kuei-I Wu v. Mamsi Life & Health Ins. Co.*, 269 F.R.D. 554, 559 (D. Md. 2010). The court should also consider whether "individual claims are so small as to inhibit an individual from pursuing his own claim." *Hewlett*, 185 F.R.D. at 215.

Mitchell does not argue that joinder is impracticable, that there is wide geographic dispersion, or that the individual claims are so small as to inhibit individual litigation.

Additionally, considering there are only twelve potential class members, and absent any special circumstances, the court does not find the class so numerous that joinder is impracticable. Accordingly, the court finds Mitchell has not meet the numerosity requirement necessary for class certification under Rule 23(a).[4]  Therefore, Mitchell's motion for class certification is denied.

## Conclusion

For the foregoing reasons, Plaintiff Mitchell's Motion for Class Certification (ECF No. 60) is **DENIED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>
United States District Judge

Anderson, South Carolina
September 24, 2013

---

[4] Because Mitchell has not met the requirements of Rule 23(a), the court need not address whether she has met the additional class certification requirements set forth in Rule 23(b).